# Exhibit 1

SEAN D. REYES (USB #7969)
Utah Attorney General
STANFORD E. PURSER (USB #13440)
Utah Solicitor General
KATHY A.F. DAVIS (USB #4022)
Assistant Attorney General
JASON DEFOREST (USB #14628)
Assistant Attorney General
1594 West North Temple
Suite 300, Salt Lake City, UT 84114
(801) 538-9600
spurser@agutah.gov
kathydavis@agutah.gov
jdeforest@agutah.gov
*Attorneys for Plaintiff State of Utah*

TYLER R. GREEN (USB #10660)
Consovoy McCarthy PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com
*Attorney for Plaintiff State of Utah*

D. DAVID DEWALD*
Deputy Attorney General
Office of the Attorney General of Wyoming
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895
david.dewald@wyo.gov
*Attorney for Plaintiff State of Wyoming*

DANIEL SHAPIRO*
KATHLEEN S. LANE*
Consovoy McCarthy PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
daniel@consovoymccarthy.com
katie@consovoymccarthy.com
*Attorneys for Plaintiff State of Utah*

*\*Application for admission pro hac vice forthcoming*

# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF UTAH

| | |
|---|---|
| STATE OF UTAH, STATE OF WYOMING, <br><br> *Plaintiffs,* <br><br> v. <br><br> DEB HAALAND, in her official capacity as the Secretary of the U.S. Department of the Interior; U.S. DEPARTMENT OF THE INTERIOR; TRACY STONE-MANNING, in her official capacity as the Director of the Bureau of Land Management; and U.S. BUREAU OF LAND MANAGEMENT, <br><br> *Defendants.* | **DECLARATION OF CRAIG W BUTTARS** |

**DECLARATION OF CRAIG W BUTTARS – 1**

I, Craig W Buttars, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am over eighteen (18) years of age and am the Commissioner of the Utah Department of Agriculture and Food ("UDAF"). I have personal knowledge of the facts and statements set forth in this declaration, which is made in response to the Bureau of Land Management's ("BLM") Conservation & Landscape Health Rule ("Public Lands Rule") and its potential impact on UDAF and associated programs.

2.      I have served as Commissioner of UDAF for 3 years. In this position, my duties include working collaboratively with rangeland stakeholders across the state such as Utah's Conservation Districts, BLM, United States Forest Service ("USFS"), state natural resources agencies, livestock producers and the public concerning rangeland vegetation monitoring, resource management projects, and federal grazing permit renewals.

3.      I have been trained in and performed a wide array of rangeland monitoring techniques. I have provided review, coordination, comment writing and technical expertise on behalf of the State of Utah, on federal grazing permit renewals, grazing allotment management plans, wild horse management, vegetation treatments, post–fire vegetation rehabilitation, and resource management planning.

4.      As UDAF Commissioner, I oversee and direct programs at UDAF, including the Grazing Improvement Program's ("GIP") activities and related range management improvements. Additionally, I am directly involved with the

**DECLARATION OF CRAIG W BUTTARS – 2**

appointment of board members for Utah's 38 conservation districts.

5.      Utah's conservation districts were established to oversee soil erosion control programs throughout the State. They are managed by local citizens to evaluate local needs and focus specifically on reducing soil erosion, improving water quality, improving wildlife habitat, conserving water, and eradicating invasive weeds. Their ties to the community help encourage private landowners to implement projects on their property and bring state and federal agencies to the table as partners to assist with funding and provide technical assistance.

6.      GIP's mission is to improve the productivity, health, and sustainability of Utah's rangelands and watersheds. GIP works to strengthen Utah's livestock industry by improving the sustainability of livestock grazing through science-based management principles and working cooperatively with federal agencies and partners to promote efficient multiple-use management of public lands. GIP provides cost-share grants to livestock producers for rangeland improvements. Eligible projects include any restoration work that will improve rangeland health, productivity, and management. Examples of projects that have received GIP grants include elimination of invasive species, reseeding, livestock water development and improvements, fencing, grazing management planning, and any other projects that improve watershed and rangeland health and productivity. Grants are awarded to livestock grazing operations on private, state, and federal land.

7.      Projects funded by GIP lead to significant positive outcomes for the surrounding natural environment.

**DECLARATION OF CRAIG W BUTTARS – 3**

8. Certain projects funded by GIP, such as water developments or fencing to keep livestock out of riparian areas, produce significant benefits to water quality in nearby streams and riparian areas.

9. Certain projects funded by GIP, such as reseeding or removal of invasive vegetation, provide significant benefits to native wildlife species and their habitat.

10. Certain projects funded by GIP, such as fencing designed to reduce grazing on aspen saplings, provides significant benefits to native flora species.

11. Plans to improve livestock grazing systems, with funding provided through GIP, provide various environmental benefits on the surrounding landscapes, including improvements for water quality, native wildlife, and native flora.

12. Because GIP's mission is to improve the sustainability of livestock grazing, it does not fund any projects in areas where livestock grazing does not occur, so in areas bereft of livestock grazing there are none of the environmental benefits usually stemming from GIP projects.

13. The BLM's Public Lands Rule takes effect on June 10, 2024.

14. It is my understanding that the Public Lands Rule authorizes BLM to issue "restoration and mitigation leases" on BLM-administered public land to any qualified individual, business, non-governmental organization, Tribal government, or state wildlife agency or conservation district.

15. These leases may be issued by the BLM for the stated purpose of advancing ecosystem resilience through protecting, managing, or restoring natural

**DECLARATION OF CRAIG W BUTTARS – 4**

environments, cultural or historic resources, and ecological communities, including species and their habitats.

16.     Once the BLM has issued a mitigation and/or restoration lease, it is my understanding that the BLM cannot authorize any other uses on the leased lands that are inconsistent with the authorized mitigation or restoration use.

17.     At a minimum, the evaluation of these leases will result in increased workload and resource allocation for UDAF. More broadly, however, the State, through its conservation districts, has an expressed interest in holding every available restoration and mitigation lease. UDAF therefore intends to collaborate with its conservation districts and the Division of Wildlife Resources ("DWR") to apply for every restoration and mitigation lease that becomes available under the Public Lands Rule. This initiative has significantly increased the workload on our staff and necessitated the use of additional resources within UDAF to prepare for these applications. These are ongoing costs incurred by UDAF as a direct result of the Public Lands Rule.

18.     It is also my understanding that the Public Lands Rule authorizes BLM to issue restoration and mitigation leases for activities, such as passive management, that can lead to degraded landscapes, proliferation of noxious weeds, and a heightened risk of catastrophic wildfires. Reactive measures to address these issues are more costly compared to proactive management through programs such as GIP. Effective active management and preventative measures are essential for maintaining the health of rangelands. Historical data indicates that efforts such as

**DECLARATION OF CRAIG W BUTTARS – 5**

wildfire suppression, when not paired with proactive management, have led to increased instances of catastrophic wildfires, underscoring the need for preventive strategies.

19. BLM's Public Lands Rule will impede the implementation of rangeland improvement projects under GIP by creating uncertainty regarding where leases may be issued and how future leaseholders will work with GIP. These projects are critical for enhancing land for livestock, wildlife, and healthy vegetative communities. Inability or delay in implementation of these projects will result in higher future costs for GIP and grazing permittees.

20. In Utah, there are approximately 1.3 million Animal Unit Months ("AUM") administered by BLM. Studies indicate that each AUM contributes approximately $100 in economic value annually to surrounding communities. Designating livestock grazing as a "commercial use" and reducing AUMs due to mitigation and restoration leases will substantially reduce economic benefits to Utah's rural communities. Any reduction in AUMs directly correlates with negative economic impacts on these predominantly rural areas.

21. It is also my understanding that the Public Lands Rule emphasizes the designation of Areas of Critical Environmental Concern ("ACECs") and the protection of "intact landscapes." In my experience, the designation of ACECs further restricts the implementation of rangeland improvement projects through programs such as GIP. These designations are also likely to reduce AUMs, thereby exacerbating economic challenges in rural communities dependent on livestock grazing.

**DECLARATION OF CRAIG W BUTTARS – 6**

22.    Based on my experience, I believe BLM lacks the necessary staff and resources to effectively implement the Public Lands Rule and its related restrictions on public land use. Consequently, the financial and operational burden of this rule will disproportionately affect UDAF, GIP, the conservation districts, and grazing permittees throughout the State.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed in Salt Lake City on June 13, 2024.

/s/ Craig W Buttars
Craig W Buttars
Commissioner
Utah Department of Agriculture and Food
State of Utah

**DECLARATION OF CRAIG W BUTTARS – 7**