# Exhibit 6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

STATE OF UTAH,
STATE OF WYOMING,

*Plaintiffs,*

v.

DEB HAALAND, in her official capacity as the
Secretary of the U.S. Department of the Interior; U.S.
DEPARTMENT OF THE INTERIOR; TRACY
STONE-MANNING, in her official capacity as the
Director of the Bureau of Land Management; and U.S.
BUREAU OF LAND MANAGEMENT,

*Defendants.*

Case No. _____

I, Jenifer E. Scoggin, declare as follows:

1.      My name is Jenifer E. Scoggin. I have been the Director of the Wyoming Office of State Lands and Investments (OSLI) since March 1, 2019. I am over 18 years of age and I am fully competent and authorized to make this Declaration. The facts in this Declaration are based on my personal knowledge or information available to me while performing my professional duties.

2.      I have a bachelor's degree in exercise physiology from the University of Wyoming, a master's degree in journalism from the University of Arizona, and a Juris Doctor from the University of Wyoming.  I have practiced as an attorney in the State of Wyoming for over twenty-four (24) years, twenty-one (21) of which include a natural resources and environmental law practice.

3.      The Wyoming Board of Land Commissioners (Board) is charged with managing certain lands granted to Wyoming upon statehood. The Wyoming Constitution and statutes mandate that the Board manage state trust land as an asset for both short- and long-term returns to

public schools and other designated beneficiaries. OSLI serves as the administrative arm for the Board.

4.      As the Director of OSLI, I am responsible for the management, leasing, and care of state trust land, including state trust land with mineral resources.

5.      When Wyoming was admitted to the Union in 1890, it was granted certain lands, largely Sections 16 and 36 in each township, located within the boundaries of the State of Wyoming. These lands were granted to support public education and other State institutions like the University of Wyoming, the Veteran's Home, and the State Hospital. The Wyoming Constitution mandated that state trust land be managed by the Board for the benefit of the State's trust beneficiaries and no other.

6.      Altogether, the Board manages 3.9 million mineral acres and 3.5 million surface acres of state trust land in Wyoming. The Board manages these lands for the benefit of thirteen (13) separate beneficiaries, 86% of which support the K-12 public school system. OSLI and the Board generate revenue by charging for the use of state trust land for various purposes, including: mineral leasing; grazing and agricultural leasing; easements; temporary use permits; special use leasing; wind energy leasing; and forest product sales. Financial and value gain for the beneficiaries is also possible from land sales, exchanges, and acquisitions. Revenue generated from these activities are distributed to, or held in trust, for the State's trust beneficiaries, depending on the nature of the activity.

7.      Grazing is the most prevalent use of state trust land, but mineral development generates the most income for the beneficiaries. Many state trust land parcels are adjacent to or surrounded by BLM-managed land. Below is an example taken from the OSLI Land and Lease Map Viewer—the yellow area represents BLM-managed land and the green area represents parcels

2

of state trust land intermingled within BLM-managed land upon which State of Wyoming grazing and agricultural leases exist. The white, or uncolored portions of the map are fee (private) land. Likewise, the development of oil and gas fields in Wyoming often include portions of intermingled federal, state, and private land as depicted below.



8.      The Final Rule, which adds more conservation management tools and encourages the BLM to manage in favor of those tools, potentially has significant negative short- and long-term impacts on state trust land use. First, there is a real potential for conservation leases and future Areas of Critical Environmental Concern (ACECs) on BLM-managed land intermingled with state trust land to impact the Board's ability to lease, access, and otherwise use those parcels for revenue generation for the State's trust beneficiaries. Decisions concerning management of BLM-managed land surrounding or adjacent to state trust land may negatively impact development of state trust land if the Board's permittees and lessees must avoid or "go around" the "conserved" parcel to reach a leased parcel. Additionally, a conservation lease or ACEC may harm or prevent development altogether on state trust land that is adjacent to or is completely surrounded by a conservation lease or ACEC. Often revenue generating projects are developed at a landscape level to allow flexibility in siting infrastructure to protect and conserve sensitive and important habitat and resource areas, as well as efficiently and safely develop the area.

3

9.    Second, the Final Rule's open-endedness and the fact that BLM can temporarily manage an area as an ACEC until the next planning process may result in a diminution in use and therefore revenue generation from state trust land. Uncertainty around BLM action may result in entities deciding not to lease state trust land that are adjacent to or surrounded by BLM-managed land, as developers need certainty that they will be able to carry out their activities for the duration of their project in order to generate revenue back to the State's trust beneficiaries.

10.    These and other impacts significantly decrease OSLI's ability to optimize revenue generation for the State's trust beneficiaries as mandated by the federal government when Wyoming was admitted into the Union in 1890. In order to generate revenue, maintain or increase the value of the land, and support the State's trust beneficiaries, the Board must have an ability to develop its minerals, and lease or permit use of the surface for grazing and other activities in a responsible and sustainable way.

11.    The Final Rule threatens the federal government's 133-year-old directive to Wyoming to generate revenue on state trust land to support the State's trust beneficiaries by essentially removing leasing and development opportunities. This renders state trust land essentially worthless, as they will be unavailable to support the State's trust beneficiaries, when in contrast, they currently have a market value and may have a revenue stream relative to the ability to responsibly operate on these important lands.

4

12.     I declare under penalty of perjury that the statements in this declaration are true and correct to the best of my knowledge, information, and belief.

DATED this __1st__ day of July, 2024.

 

 

Jenifer E. Scoggin
Director
Wyoming Office of State Lands and Investment