Stephen H.M. Bloch (# 7813)
Michelle White (# 16985)
SOUTHERN UTAH WILDERNESS ALLIANCE
425 East 100 South
Salt Lake City, Utah 84111
Telephone: (801) 486-3161
steve@suwa.org
michellew@suwa.org

Attorneys for Proposed Defendant-Intervenors
Southern Utah Wilderness Alliance and The Wilderness Society

Todd C. Tucci (Idaho Bar # 6526) (*pro hac vice* application forthcoming)
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, Idaho 83702
Telephone: (208) 724-2142
ttucci@advocateswest.oerg

Attorney for Proposed Defendant-Intervenor Conservation Lands Foundation

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STATE OF UTAH, *et al.*, <br><br>    Plaintiffs, <br><br>    v. <br><br> DEB HAALAND, in her official capacity as the Secretary of the U.S. Department of the Interior *et al.*, <br><br>    Defendants, <br><br>   and, <br><br> SOUTHERN UTAH WILDERNESS ALLIANCE, CONSERVATION LANDS FOUNDATION, and THE WILDERNESS SOCIETY, <br><br>    Proposed Defendant-Intervenors. | Case No. 2:24-cv-00438-DBB-DAO <br><br> **MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT** <br><br><br> Judge David Barlow <br> Magistrate Judge Daphne Oberg |

The Southern Utah Wilderness Alliance, Conservation Lands Foundation, and The Wilderness Society (collectively, "SUWA Groups") respectfully move this Court for an Order granting them intervention as of right in this matter. Counsel for Plaintiffs State of Utah *et al.* have informed counsel for SUWA that Plaintiffs oppose this Motion. Counsel for Federal Defendants Secretary of the Department of the Interior Deb Haaland *et al.* advised counsel for SUWA that federal defendants take no position on this Motion.

## INTRODUCTION

Plaintiffs States of Utah and Wyoming (together, "Plaintiffs") have challenged the Bureau of Land Management's (BLM) recently finalized Conservation and Landscape Health Rule (Rule), alleging that BLM violated the National Environmental Policy Act (NEPA).[1] BLM finalized the Rule after an extensive notice and comment rulemaking process, including an extended 90-day comment period and several in-person and virtual public meetings, and after receiving and reviewing roughly 200,000 public comments which were overwhelmingly in favor of the Rule. In short, the Rule advances BLM's longstanding authority to conserve intact, healthy ecosystems and restore degraded public lands under the Federal Land Policy and Management Act's (FLPMA) multiple use and sustained yield mandate. For example, the Rule instructs BLM to develop new or revised watershed and land health standards and incorporate them into future land management decisions for all public lands. The Rule also establishes a process for future mitigation or restoration leasing and separately updates the processes that BLM follows to designate special management protections for certain significant historic, cultural, scenic, and other natural resources in the form of Areas of Critical Environmental Concern (ACECs).

---

[1] Compl. ¶¶ 62, 103-155.

The SUWA Groups have worked for decades to conserve remaining wild places in Utah, Wyoming and across the western United States by engaging with BLM's various decision-making processes and advocating for the preservation, protection, and restoration of public lands. To that end, each of the Groups submitted timely comments in support of the Rule and urged their members and supporters to do the same. The Rule will aid in the SUWA Groups' conservation efforts because it provides a consistent framework for achieving these goals and confirms BLM's clear authority and obligations to treat conservation of public lands as equal to other uses in accordance with FLPMA. As explained below, the SUWA Groups' longstanding and focused interest in achieving significant conservation for public lands in Utah, Wyoming, and across the western United States easily meets the Tenth Circuit's four-part test for intervention as of right and thus this motion should be granted.

## ARGUMENT

Under Federal Rule of Civil Procedure 24(a)(2), upon a timely motion, "the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[2] The Tenth Circuit follows "a somewhat liberal line in allowing intervention."[3] "Federal courts should allow intervention where no one would be hurt and greater justice could be attained."[4] Moreover, when litigation raises an issue of significant

---

[2] Fed. R. Civ. P. 24(a)(2).
[3] *Nat'l Farm Lines v. Interstate Com. Comm'n*, 564 F.2d 381, 384 (10th Cir. 1977) (citation omitted); *see also e.g. W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (citation omitted).
[4] *Utah Ass'n of Cntys v. Clinton* (*UAC*), 255 F.3d 1246, 1250 (10th Cir. 2001) (internal quotation marks and citation omitted).

public interest, "the requirements for intervention may be relaxed."[5] The SUWA Groups meet each of the requirements for intervention as of right under Rule 24(a)(2).

## I.      The Motion to Intervene is Timely.

The SUWA Groups filed this motion within five weeks of when Plaintiffs filed their complaint and within two weeks after Plaintiffs filed their Motion for Preliminary Injunction. The United States' response to that Motion is due August 1.[6] Because the litigation is at an early stage, there can be no prejudice to any party from granting the SUWA Groups' Motion to Intervene.[7]

## II.     The SUWA Groups Have a Legally Protectable Interest in the Conservation of BLM-Managed Public Lands.

A prospective intervenor's environmental concern—demonstrated through a record of involvement in defending that environmental concern—is a legally protectable interest sufficient to support intervention as of right under Rule 24(a)(2).[8] There is no serious question that the SUWA Groups have "an interest relating to the property or transaction that is the subject of the action"— an extensive record of advocating for the conservation of the public lands in Utah, Wyoming and across the western United States.

The SUWA Groups, as well as their members, have a significant interest in the BLM-managed public lands that will benefit from the Rule's conservation framework. For decades, they have promoted and defended conservation of BLM-managed public lands by engaging at

---

[5] *San Juan Cnty. v. United States*, 503 F.3d 1163, 1201 (10th Cir. 2007) (en banc).
[6] ECF No. 26.
[7] *See UAC*, 255 F.3d at 1250–51 (holding motion to intervene was timely given lack of prejudice to plaintiffs and "relatively early stage of the litigation").
[8] *See Zinke*, 877 F.3d at 1165-66 (holding that conservation groups with a "record of advocacy" and "a demonstrated concern for the damage to public lands caused by oil and gas developments" had a legally protectable interest that may be impaired by the litigation).

every level of BLM's decision-making, from rulemakings, to land management planning, to site-specific permitting; all told, the sweep of their advocacy is comprehensive.[9] This often includes, but is not limited to submitting detailed public comments containing unique information from extensive on-the-ground field work and/or science produced in-house, meeting directly with agency staff, and, when necessary, litigating either in support of or against BLM's ultimate decision.[10] The SUWA Groups work to preserve, protect, and restore public lands, and prevent, minimize and mitigate human-caused degradation through the responsible management of, for example, motorized vehicles and extractive development.[11]

The SUWA Groups' staff and members frequently visit BLM-managed lands in Utah, Wyoming and across the western United States for their livelihood,[12] as well as recreation, sightseeing, and cultural and aesthetic appreciation—and healthy, intact landscapes are critical to their employment and/or enjoyment of public lands.[13]

The SUWA Groups' staff and members long-standing and extensive record of engagement with BLM to conserve public lands and frequent personal and professional enjoyment of these lands is the legally-protectible interest required for intervention.

## III.   If Successful, Plaintiffs' Lawsuit Will Impair the SUWA Groups' Ability to Protect their Environmental Interests.

The SUWA Groups also satisfy Rule 24(a)(2)'s impairment prong, which requires a

---

[9] *See* Declaration of Ray Bloxham ¶¶ 12-15 (attached as Ex. 1); Declaration of Charlotte Overby ¶¶ 16-35 (attached as Ex. 2); Declaration of Rob Mason ¶¶ 3, 5-15, 17 (attached as Ex. 3); Declaration of Andy Blair ¶ 3 (attached as Ex. 4).

[10] *See* Bloxham Decl. ¶¶ 12-15; Overby Decl. ¶¶ 16-25; Mason Decl. ¶¶ 8-11, 13, 15, 17; Blair Decl. ¶ 3

[11] *See* Bloxham Decl. ¶¶ 12-15; Overby Decl. ¶ 19; Mason Decl. ¶¶ 8-9, 13, 15, 17.

[12] *See* Blair Decl. ¶ 6.

[13] *See* Bloxham Decl. ¶¶ 4-5, 16-17; Overby Decl. ¶¶ 5-15; Mason Decl. ¶¶ 18-19; Blair Decl. ¶¶ 6-8.

showing that the litigation "may as a practical matter impair or impede the movant's interest."[14] This is a "minimal burden" and requires the movants to show "only that impairment . . . is *possible* if intervention is denied."[15] Here, the SUWA Groups' ability to achieve the conservation – and its staff and members' enjoyment – of public lands may be impaired if the Court reverses, vacates, sets aside, or enjoins the Rule.

A ruling in Plaintiffs' favor would harm the SUWA Groups by eliminating tools they intend to use to achieve protection and restoration of public lands.[16] For example, BLM would no longer be directed to maintain an inventory of landscape intactness and incorporate that value into upcoming planning and management decisions.[17] In turn, the SUWA Groups would not be able to use the inventories to advocate for greater protections for intact ecosystems when they participate in BLM's subsequent decision-making. Likewise, if the Rule were eliminated, the forthcoming "fundamentals of land health," which will be designed to improve habitat conditions such as watershed function, ecological processes, water quality, and wildlife habitat, would not be applied broadly across all public lands.[18] As a result, the SUWA Groups would be unable to use these benchmarks to urge BLM to protect and restore public lands.[19] Nor would the Groups be able to use the Rule to encourage BLM to prioritize the designation of ACECs to protect their significant values, including their contribution to ecosystem

---

[14] Fed. R. Civ. P. 24(a)(2).

[15] *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010)) (emphasis added); *see also Zinke*, 877 F.3d at 1167 (noting that test regarding potential impairment of interest "is met in environmental cases where the district court's decision would require the federal agency to engage in an additional round of administrative planning and decision-making.").

[16] *See* Bloxham Decl. ¶ 18; Overby Decl. ¶¶ 26-34; Mason Decl. ¶¶ 12-13, 17, 20; Blair Decl. ¶¶ 17-18.

[17] *See* 43 C.F.R. § 6102.2.

[18] *See id.* §§ 6103.1, 6103.1.1.

[19] *Id.* § 6103.1.2.

resilience.[20]

A decision by the Court to vacate, enjoin, set aside, or modify the Rule would harm the SUWA Groups' ability to advocate for the conservation and protection of public lands; whereas the harms to their interests would not occur if the Court upholds the Rule.

## IV.     The United States May Not Adequately Represent the SUWA Groups' Interests.

As the Tenth Circuit has repeatedly recognized, Rule 24(a)(2)'s adequacy prong is a low bar which is satisfied where the government's broad obligation to represent the public interest "*may* conflict" with the intervenors' "particular interest[s]"—even if they share the same ultimate litigation objective.[21] "If the [BLM] and the intervenors would only be aligned if the [] court ruled in a particular way, then a possibility of inadequate representation exists."[22]

As in *Zinke* and *UAC*, here the United States may not adequately represent the SUWA Groups' unique and long-standing interests in achieving significant conservation of public lands. Unlike the BLM, which is required by law to balance competing uses of the public lands across the nation,[23] the SUWA Groups are focused exclusively on the conservation and protection of wild and intact public lands in Utah, Wyoming and across the western United States.[24] Indeed, the SUWA Groups often find themselves at odds with BLM, both in terms of *which* lands should be protected from human-caused degradation, and *how* BLM should

---

[20] *See id.* § 1610.7-2(d)(2); Bloxham Decl. ¶ 13(c) (explaining that SUWA has nominated areas for ACEC designation, but BLM has not yet evaluated those nominations); Mason Decl. ¶¶ 10, 16, 20; Blair Decl. ¶ 11.

[21] *UAC*, 255 F.3d at 1255–56 (emphasis added); *Zinke*, 877 F.3d at 1168. *See also Kane Cnty. v. United States*, 928 F.3d 877, 895-96 (10th Cir. 2019) (finding inadequate representation where government's "broad-ranging" interests were not identical to intervenor's narrower interests).

[22] *Zinke*, 877 F.3d at 1168 (quoting *N.M. Off-Highway Vehicle All. v. U.S. Forest Serv.*, 540 Fed.Appx. 877, 881–82 (10th Cir. 2013)).

[23] See 43 U.S.C. § 1702(c), 1712(c)(1).

[24] *See* Bloxham Decl. ¶ 8; Overby Decl. ¶¶ 16-25; Mason Decl. ¶¶ 3, 7-8, 12, 20.

achieve that protection.[25] The record here demonstrates that BLM is not fully aligned with the SUWA Groups in this case. Indeed, BLM did not adopt many of the SUWA Groups' various comments and proposals to strengthen the Rule. For example, The Wilderness Society requested that the final Rule: (a) require BLM to identify and protect old-growth emphasis areas and habitat connectivity areas; (b) provide additional direction on managing for climate resilience; (c) provide direction on the wilderness resource, including through identification and protection of Lands with Wilderness Characteristics; (d) further strengthen priority management direction and removal requirements for ACECs; and (e) strengthen the definition of preventing unnecessary or undue degradation. Because the SUWA Groups' interests are not "wholly align[ed]" with BLM's interests, intervention is appropriate.[26]

Finally, there is no guarantee that the BLM's position regarding the Rule will not shift during litigation.[27] The chances of a shift in agency policy are higher in a case like this one where the rule was adopted in an election year.[28] The SUWA Groups simply cannot rely on BLM to represent their focused interests in conservation and environmental protection and should be allowed to intervene.

---

[25] *See* Bloxham Decl. ¶¶ 12-13; Overby Decl. ¶ 22; Mason Decl. ¶¶ 10, 12.

[26] *N.M. Off-Highway Vehicle All.*, 540 F. Appx at 881.

[27] *UAC*, 255 F.3d at 1256 (granting intervention and noting that "it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts") (quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998)).

[28] *See, e.g.*, *Zinke*, 877 F.3d at 1169 (noting that a change in presidential administration also changed BLM's position in litigation involving a regulation promulgated by the previous administration); *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1107 (9th Cir. 2002) (noting George W. Bush administration stopped defending challenge to Roadless Rule promulgated by Clinton administration).

**CONCLUSION**

For the reasons stated above, the SUWA Groups respectfully requests that the Court

grant their Motion to Intervene.

Respectfully Submitted July 25, 2024

/s/ Stephen Bloch
Stephen Bloch
Michelle White

Attorneys for Proposed Defendant-Intervenor
Southern Utah Wilderness Alliance and The
Wilderness Society

Todd C. Tucci (*pro hac vice* application
forthcoming)
Attorney for Proposed Defendant-Intervenor
Conservation Lands Foundation