UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STATE OF UTAH, and<br>STATE OF WYOMING,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEB HAALAND, in her official capacity as the Secretary of the Interior; U.S. DEPARTMENT OF THE INTERIOR; TRACY STONE-MANNING, in her official capacity as the Director of the Bureau of Land Management; and U.S. BUREAU OF LAND MANAGEMENT,<br><br>    Defendants. | No. 2:24-cv-00438<br><br>**Declaration of Sharif Branham** |

I, Sharif Branham, in accordance with the requirements of 28 U.S.C. § 1746, declare:

    1.    I am the Assistant Director for Resources and Planning for the Bureau of Land Management (BLM), an agency of the U.S. Department of the Interior (Department). In my capacity as Assistant Director, I am responsible for overseeing BLM policies and procedures relating to the implementation of the Conservation and Landscape Health Rule, also known as the "Public Lands Rule," 89 Fed. Reg. 40,308 (May 9, 2024). I am also responsible for overseeing BLM policies and procedures relating to land use planning.

    2.    In my capacity as Assistant Director, I am responsible for overseeing the BLM's initial implementation of the Rule, including the issuance of any restoration or mitigation leases under 43 C.F.R. § 6102.4.

    3.    To date, the BLM has not received any applications for restoration or mitigation leases under 43 C.F.R. § 6102.4. If the BLM were to receive such an application, the BLM

would, before authorizing a restoration or mitigation lease, comply with all the applicable requirements in the Rule, including those required by section 6102.4, and any subsequent policies guiding the implementation of the Rule. The BLM would also comply with other applicable laws, including the National Environmental Policy Act (NEPA). Because the BLM has not established a categorical exclusion (CX) for the issuance of a restoration or mitigation lease, compliance with NEPA would likely require the BLM, before issuing such a lease, to prepare an Environmental Assessment (EA) or an Environmental Impact Statement (EIS).

4. The BLM has not initiated any land use planning processes that rely on the Rule since its publication and does not anticipate issuing land use planning decisions that rely on the Rule in the near future. Generally, the BLM does not expect to apply the Rule to any land use planning efforts for which the BLM has already published a Draft Resource Management Plan for public comment.

5. Under the Rule, the BLM identifies and decides how to manage intact landscapes through the land use planning process. While the Rule defines an intact landscape, 43 C.F.R. § 6101.4(j), the BLM will identify any intact landscapes, evaluate alternatives for managing those intact landscapes, and decide how to manage any intact landscapes or portions of intact landscapes through the land use planning process. *Id.* § 6102.2(b). As noted above, the land use planning process includes an opportunity for public review and comment, as well as participation by cooperating agencies, including state, local and Tribal governments, in crafting alternatives and conducting environmental analysis, as well as a consistency review by the governor of the affected state. *Id.* §§ 1610.2, 1610.7-2(b), 1610.3-1, 1610.3-2. In addition, the Rule provides that decisions regarding management of intact landscapes should be made in coordination with

communities, in order to also take into account "geographic areas important for their strategic growth and development." *Id.* § 6102.2(c)(2).

6. While the Rule made minor changes to some of the procedures governing the BLM's designation of ACECs in its land use planning process, the overall process remains consistent with the prior regulations and the BLM Manual Section 1613, Areas of Critical Environmental Concern (1988), which is available on the BLM's website. Under the Rule, the designation, modification, or de-designation of an ACEC in a land use planning process will continue to include an opportunity for public review and comment, as well as participation by cooperating agencies, including state, local and Tribal governments, an opportunity for members of the public to protest proposed decisions, and a consistency review by the governor of the affected state. *Id.* §§ 1610.2, 1610.7-2(b), 1610.3-1, 1610.3-2(3), 1610.5-2.

7. The Rule also codified and elaborated on existing procedures for responding to external nominations for ACECs outside of the planning process. *Id.* § 1610.7-2(i). The principal changes made by the Rule are to clarify that if the BLM evaluates an external nomination and determines that temporary management to protect resource values is necessary, it may authorize such temporary management only after confirming that it is necessary to protect relevant and important values on the public lands. The BLM must also notify the public of any temporary management and periodically re-assess any temporary management. *Id.* § 1610.7-2(i)(1)(ii). The principal changes made by the Rule are to clarify that the BLM, when responding to any such nomination, may authorize temporary management only after confirming that it is necessary to protect relevant and important values on the public lands, while also requiring the BLM to notify the public of any temporary management and periodically re-assess any temporary management. *Id.* § 1610.7-2(i)(1)(ii). Though the Rule explains that "ACEC nominations typically should be

3

evaluated during a planning process," *id.*, it also directs BLM State Directors to evaluate any such nominations of property lands received outside of the land use planning process to determine whether the lands meet the criteria for relevance, importance, and the need for special management attention. *Id.* § 1610.7-2(i)(1). If the nominated lands meet these criteria, the Rule identifies two options for BLM State Directors. First, a State Director can initiate a land use planning process, *id.* § 1610.7-2(i)(1)(i), which includes public participation opportunities and requires compliance with NEPA. *Id.* § 1610.2(a). Second, a State Director can provide for temporary management to protect relevant and important values from irreparable damage. *Id.* § 1610.7-2(i)(1)(ii). When authorizing any such temporary management, the BLM would need to comply with applicable law, including NEPA, ensure the management is consistent with the approved land use plan, notify the public and regularly revisit the need for such management. *Id.*; *see also* 89 Fed. Reg. 40,326 ("If the BLM decides to implement temporary management, the BLM will comply with all applicable laws, including NEPA, notify the public, and reevaluate the area periodically to ensure temporary management is still necessary."). These procedures are similar to the current direction in BLM Manual Section 1613, Areas of Critical Environmental Concern, which provides:

> If an area is identified for consideration as an ACEC and a planning effort is not underway or imminent, the District Manager or Area Manager must make a preliminary evaluation on a timely basis to determine if the relevance and importance criteria are met. If so, the District Manager must initiate either a plan amendment to further evaluate the potential ACEC or provide temporary management until an evaluation is completed through resource management planning. Temporary management includes those reasonable measures necessary to protect human life and safety or identified relevant and important resource values from degradation until the area is fully evaluated through the resource management planning process.

BLM Manual Section 1613.21.E. Notably, however, where the Rule changes this process, it sets out specific actions for the BLM to notify the public and periodically evaluate the need for ongoing temporary management. *See* 43 C.F.R. § 1610.7-2(i)(1)(ii) (directing the BLM to

"publish a public notice if temporary management is implemented" and complete periodic evaluation of any such temporary management).

8. The Rule is in the public interest because it provides a framework for the BLM to apply the principles of multiple use and sustained yield to restoration and protection of the public lands. The Rule provides a mechanism for the BLM to implement the directives of the Federal Land Policy and Management Act to seek to provide "a combination of balanced and diverse resource uses that takes into account the long-term needs of future generations for renewable and nonrenewable resources, including, but not limited to, recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic, scientific and historical values," 43 U.S.C. § 1702(c), while also prioritizing the designation and protection of ACECs and preventing unnecessary or undue degradation of the public lands. The Rule builds on the lessons that the BLM has learned over almost 50 years of managing our shared public lands, incorporating existing guidance and processes into one framework that will support increased consistency and efficiency. The many benefits to the public are discussed in further detail in the preambles to the proposed Rule and the final Rule.

9. The BLM is preparing an administrative record relating to this suit. The BLM currently estimates that it will have a complete administrative record and a supporting index to lodge with the Court by October 14, 2024.

I declare under penalty of perjury that the foregoing is true and correct to the best of my current knowledge, information, and belief.

Executed on this 1st day of August 2024, in Washington, DC.

_____
Sharif Branham
Assistant Director, Resources and Planning
Bureau of Land Management