# CX Documentation for the Conservation and Landscape Health Rule

### A. Background

**BLM Office:** BLM Headquarters             **Lease/Serial/Case File No.:** RIN 1004-AE92

**Proposed Action Title/Type:** Final Rulemaking, Conservation and Landscape Health Rule

**Location of Proposed Action:** N/A

**Description of Proposed Action:** The Bureau of Land Management (BLM) is promulgating new regulations that, pursuant to the Federal Land Policy and Management Act of 1976 (FLPMA), as amended, and other relevant authorities, would advance the BLM's mission to manage the public lands under the principles of multiple use and sustained yield by prioritizing the health and resilience of ecosystems across those lands. To ensure that health and resilience, the regulations promote the use of conservation, protection of intact landscapes, and restoration of degraded habitat and call for such actions to be based on high quality science and data. To support these activities, the regulations would apply land health standards to all BLM-managed public lands and uses, clarify and codify conservation tools to be used within FLPMA's multiple-use framework, and revise existing regulations to better meet FLPMA's requirement that the BLM prioritize designating and protecting Areas of Critical Environmental Concern (ACECs). The regulations would provide an overarching framework for multiple BLM programs to promote ecosystem resilience on public lands.

### B. Compliance with NEPA

This rulemaking is categorically excluded from further analysis and documentation under the National Environmental Policy Act (NEPA) in accordance with 43 CFR 46.210(i), which categorically excludes from further NEPA review "[p]olicies, directives, regulations, and guidelines that are of an administrative, financial, legal, technical, or procedural nature; or whose environmental effects are too broad, speculative, or conjectural to lend themselves to meaningful analysis and will later be subject to the NEPA process, either collectively or case-by-case." This rule is not self-executing in that it would not result in immediate changes to management of any public lands, does not itself authorize any on-the-ground actions, does not (absent future decisions that implement the rule) restrict the BLM's discretion to undertake or authorize future on-the-ground actions. Any future change in management or authorization of on-the-ground activities would be subject to a separate decision-making process. As such, the proposed rule is administrative and procedural in nature.

Nor will this rule directly result in any environmental effects. Its environmental impacts depend on the BLM decisions that implement and are otherwise shaped by the rule, making them too speculative or conjectural at this time to lend themselves to meaningful analysis. NEPA and other applicable environmental laws will apply on a case-by-case basis to those future land use planning and individual project-level decisions made pursuant to the processes established by the rule.

EXHIBIT 1

Reliance on this categorical exclusion is appropriate because none of the extraordinary circumstances identified in 43 CFR 46.215 applies to this rulemaking.

Table 1.  Consideration of Extraordinary Circumstances

| **The proposed action will not:** |
|---|
| (a) Have significant impacts on public health or safety. |
| Rationale: The Conservation and Landscape Health Rule does not authorize any on-the-ground actions or substantively restrict the BLM's discretion to undertake or authorize future on-the-ground actions, and the procedures for future decision-making that the rule puts in place will not cause impacts to public health and safety. The rule requires authorized officers to consult with Tribes and consider high quality information in decision-making and provides a new leasing tool that may be used (but is not required to be used) to implement restoration and mitigation projects. It is impossible to predict what decisions an authorized officer will make at the field level in the course of implementing this rule following the processes it outlines and what effect those decisions will have on public health and safety. Any decisions made following the promulgation of this rule will be reviewed through the NEPA process and impacts to public health and safety would be considered at that time. |
| (b) Have significant impacts on such natural resources and unique geographic characteristics as historic or cultural resources; park, recreation or refuge lands; wilderness areas; wild or scenic rivers; national natural landmarks; sole or principal drinking water aquifers; prime farmlands; wetlands (Executive Order 11990); floodplains (Executive Order 11988); national monuments; migratory birds; and other ecologically significant or critical areas. |
| Rationale: The rule does not authorize any on-the-ground actions or substantively restrict the BLM's discretion to undertake or authorize future on-the-ground actions. No part of the rule would diminish the procedural or substantive protections for these resources required by laws, regulations, or Executive Orders. The rule requires authorized officers to consult with Tribes, consider high quality information in decision-making, and identify and protect intact landscapes, and provides a new leasing tool that may be used (but is not required to be used) to implement restoration and mitigation projects. It is impossible to predict what decisions an authorized officer will make at the field level in the course of implementing this rule following the processes it outlines and what effect those decisions will have on natural resources and unique geographic characteristics. Impacts to the resources listed above will be evaluated through the NEPA process at such time as decisions that affect them are being made. |
| (c) Have highly controversial environmental effects or involve unresolved conflicts concerning alternative uses of available resources [NEPA Section 102(2)(E)]. |
| Rationale: The rule does not change the BLM's mandate to manage public lands for multiple use and sustained yield. The rule does not make land use planning or individual project-level decisions, and the BLM will comply with NEPA when considering proposed actions that implement the procedures in the rule. The rule will not directly and of its own force result in environmental effects, let alone highly controversial ones, and it is impossible to determine at this time if decisions made in the course of implementing this rule following the processes it outlines will be highly controversial or will lead to conflicts between competing uses. The BLM does not anticipate that this rulemaking will lead to significant new conflicts among alternative uses, and if future land use decisions may have |

| **The proposed action will not:** |
|---|
| controversial environmental effects they will be analyzed, including as part of a NEPA process, at the time the decision is made. |
| (d) Have highly uncertain and potentially significant environmental effects or involve unique or unknown environmental risks. |
| Rationale: The rule will not directly and of its own force result in environmental effects, and it is impossible to determine at this time if decisions made following the processes outlined in this rule will have highly uncertain or potentially significant environmental effects or involve unique or unknown environmental risks. The rule does not make land use planning or individual project-level decisions, and the effects of proposed actions that implement the rule will be evaluated through the NEPA process. |
| (e) Establish a precedent for future action or represent a decision in principle about future actions with potentially significant environmental effects. |
| Rationale: The rule does not mandate a particular land use planning or individual project-level decision; it is a procedural rule only. |
| (f) Have a direct relationship to other actions with individually insignificant but cumulatively significant environmental effects. |
| Rationale: The rule does not make land use planning or individual project-level decisions, and the location and timing of proposed actions to implement the rule are unknown. Therefore, any relationship to the effects of other actions is also necessarily unknown. Cumulative impacts of decisions made in the course of implementing this rule following the processes it outlines will be analyzed, including, as appropriate, under NEPA, at such time as those decisions are being considered. |
| (g) Have significant impacts on properties listed, or eligible for listing, on the National Register of Historic Places as determined by either the bureau or office. |
| Rationale: The rule does not make land use planning or individual project-level decisions; impacts to historic places will be evaluated, including, as appropriate, under NEPA, when land use planning or individual project-level decisions are being considered. No part of the rule's processes will change how historic places are evaluated and considered in making decisions. |
| (h) Have significant impacts on species listed, or proposed to be listed, on the List of Endangered or Threatened Species, or have significant impacts on designated Critical Habitat for these species. |
| Rationale: The rule does not make land use planning or individual project-level decisions; impacts to endangered and threatened species will be evaluated, including, as appropriate, under NEPA, when land use planning or individual project-level decisions are being considered. No part of the rule's processes will change how endangered and threatened species are evaluated and considered in making decisions. |
| (i) Violate a Federal law, or a State, local, or Tribal law or requirement imposed for the protection of the environment. |
| Rationale: The rule does not violate any Federal, State, local, or Tribal law imposed for the protection of the environment.  The rule is consistent with the current laws that apply to the BLM's management of public lands and with State, local and Tribal statutes imposed for the protection of the environment. The Federal Land Policy and Management Act (FLPMA) provides that conservation use is an important component of managing the public lands under principles of multiple use and sustained yield and expressly states, as a |

| **The proposed action will not:** |
|---|
| matter of policy, that public lands should be managed to protect environmental and water resources, fish and wildlife habitat, and outdoor recreation, among other values, all of which benefit from the conservation of intact habitat and the restoration of degraded lands. FLPMA also requires the BLM to prevent unnecessary or undue degradation, and the rule includes additional tools to help meet this congressional mandate. This rule would allow the BLM to better fulfill its mission, ensuring public lands continue to be accessible and productive for future generations, and provide tools and processes to enable management decisions based on data, high quality information and science. The rule does not prioritize one use over another, and no part of the rule changes the BLM's multiple use mandate. In all cases, land use allocations that determine which uses will be allowed in which areas will be made using the BLM's land use planning process, during which consistency with other laws is required to be evaluated. |
| (j) Have a disproportionately high and adverse effect on low income or minority populations (Executive Order 12898). |
| Rationale: The rule does not have disproportionate and adverse effects on communities with environmental justice concerns. An objective of the rule and the decision-making processes outlined in the rule is to advance environmental justice. |
| (k) Limit access to and ceremonial use of Indian sacred sites on Federal lands by Indian religious practitioners or significantly adversely affect the physical integrity of such sacred sites (Executive Order 13007). |
| Rationale: The rule makes allowance for the use of Indigenous Knowledges and Tribal engagement in decision-making; decisions made pursuant to the processes outlined in the rule will prevent adverse impacts to access to and use of tribal sacred sites. |
| (l) Contribute to the introduction, continued existence, or spread of noxious weeds or non-native invasive species known to occur in the area or actions that may promote the introduction, growth, or expansion of the range of such species (Federal Noxious Weed Control Act and Executive Order 13112). |
| Rationale: The rule's overall objective is to promote ecosystem resilience through conservation actions, and the rule includes provisions related to monitoring and adaptive management strategies for maintaining sustained yield of renewable resources, accounting for invasive species and other disturbances. A goal of those provisions is to prevent the introduction, continued existence and spread of noxious weeds or non-native invasive species. The rule does not authorize any on-the-ground actions or substantively restrict the BLM's discretion to undertake or authorize future on-the-ground actions. Any impacts of subsequent land use decisions that follow these regulations on the presence and prevalence of invasive species will be evaluated, including, as appropriate, under NEPA, at the time they are considered. |

**C. Signature**

Responsible Official: _____   Date: _____
                               (Signature)
Name: Brian St. George
Title: Acting Assistant Director, Resources and Planning Directorate

**D. Contact Person**

For additional information concerning this CX review, contact Patricia Johnston, Project Manager for the Conservation and Landscape Health Rule, at 541-600-9693, or pjohnsto@blm.gov.