SEAN D. REYES (USB #7969)
Utah Attorney General
STANFORD E. PURSER (USB #13440)
Utah Solicitor General
KATHY A.F. DAVIS (USB #4022)
JASON DEFOREST (USB #14628)
K. TESS DAVIS (USB #15831)
Assistant Attorneys General
1594 West North Temple
Suite 300, Salt Lake City, UT 84114
(801) 538-9600
spurser@agutah.gov
kathydavis@agutah.gov
jdeforest@agutah.gov
kaitlindavis@agutah.gov
*Attorneys for Plaintiff State of Utah*

TYLER R. GREEN (USB #10660)
CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com
*Attorney for Plaintiff State of Utah*

D. DAVID DEWALD
Deputy Attorney General
Office of the Attorney General of Wyoming
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895
david.dewald@wyo.gov
*Attorney for Plaintiff State of Wyoming*

DANIEL SHAPIRO*
KATHLEEN S. LANE*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
daniel@consovoymccarthy.com
katie@consovoymccarthy.com
*Attorneys for Plaintiff State of Utah*

*\*Application for admission pro hac vice
forthcoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STATE OF UTAH, STATE OF WYOMING, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEB HAALAND, in her official capacity as the Secretary of the U.S. Department of the Interior; U.S. DEPARTMENT OF THE INTERIOR; TRACY STONE-MANNING, in her official capacity as the Director of the Bureau of Land Management; and U.S. BUREAU OF LAND MANAGEMENT, <br><br> *Defendants*. | **Memorandum in Opposition to SUWA Groups' Motion to Intervene** <br><br> Case No. 2:24-cv-00438 <br><br> Judge David Barlow |

1

Plaintiffs State of Utah and State of Wyoming ("Plaintiff States") hereby respectfully submit their Memorandum in Opposition to the Proposed Defendant-Intervenors Southern Utah Wilderness Alliance, Conservation Lands Foundation, and The Wilderness Society's (collectively "SUWA") Motion to Intervene. SUWA's arguments for intervention fundamentally misconstrue the substance of Plaintiff States' challenge and requested relief. This is a narrowly tailored challenge to the Bureau of Land Management's ("BLM") failure to conduct the requisite environmental review under the National Environmental Policy Act ("NEPA") for the BLM's Conservation and Landscape Health Rule ("Rule"). It is therefore a procedural challenge to an obligation that belongs solely to the BLM. More importantly, the BLM will fully represent SUWA's interests in this matter. The Motion to Intervene should be denied.

## INTRODUCTION

Plaintiff States have made it abundantly clear that this is a procedural claim under NEPA. Complaint, Dkt. 1, ¶¶ 103-155. The BLM failed to account for Plaintiff States' significant environmental interests when it evaluated the Rule and therefore failed to take the hard look required under NEPA. *See generally*, Complaint, Dkt. 1. Indeed, SUWA's argument begins with an outright recognition that Plaintiff States are challenging the Rule based on these NEPA arguments. *See* Memorandum in Support of Motion to Intervene, Dkt. 28, p. 1. Despite this recognition, SUWA then engages in speculation as to how *implementation* of the Rule will affect their interests and/or how overturning the Rule would "eliminat[e] tools they intend to use to achieve protection and restoration of public lands." *Id.* at p. 5.

To be clear, Plaintiff States are prepared to challenge the legality of the Rule, *post implementation*, because it exceeds the authority granted to the BLM under the Federal Land Policy and Management Act ("FLPMA"). In the meantime, however, Plaintiff States are

challenging the Rule because BLM failed to comply with NEPA, a procedural challenge which is fundamentally different from a broader challenge to the Rule's legality under FLPMA. SUWA's asserted interests are nevertheless directed entirely to how implementation of the Rule will allegedly affect SUWA's "conservation efforts." *See* Memorandum in Support of Motion to Intervene, Dkt. 28, p. 3. This has no effect on Plaintiff States' argument that the Rule must be subject to proper NEPA analysis. Additionally, undertaking a NEPA analysis does not, in and of itself, substantively alter the Rule. Instead, a NEPA analysis merely ensures that BLM has taken a hard look at the environmental effect of this significant governmental action. *See, e.g.*, *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 333 (1989) (finding "it is well settled that NEPA itself does not impose substantive duties mandating particular results, but simply prescribes the necessary process for preventing uninformed – rather than unwise – agency action"). SUWA's suggestion that the Rule will "provide a consistent framework" for achieving its conservation goals only highlights the need for further NEPA review.

Stated simply, this is a binary argument, capable of resolution without impairing SUWA's interests. Plaintiff States allege that the BLM failed to conduct the necessary review under NEPA. If the Court agrees with Plaintiff States, further NEPA review must be conducted. There is no indication, absent rank speculation, as to how that process would substantively affect the Rule, if at all. On the other hand, if the Court agrees with the Federal Defendants, no further NEPA review is required, and implementation of the Rule will continue unimpeded. Either way, the interest of SUWA and the Federal Defendants are identical – defend the Federal Defendants' finding that NEPA analysis was not required and therefore avoid additional environmental review. The Federal Defendants are perfectly capable, and have already demonstrated their intent, to fully litigate those interests. The Motion to Intervene should be denied.

**ARGUMENT**

SUWA's Motion should be denied because their interests will not be impaired by the relief requested and, in any event, the Federal Defendants will adequately represent SUWA's interests.

**I.      SUWA IS NOT ENTITLED TO RULE 24 INTERVENTION.**

**A.   SUWA is not entitled to intervene as of right.**

Under Rule 24, a proposed intervenor-as-of-right must establish (1) an "interest relating to the property or transaction that is the subject of the action" (2) that may be "impair[ed]" by the action, and (3) that is not "adequately represent[ed] by existing parties." Fed. R. Civ. P. 24(a)(2); *Tri-State Generation & Transmission Ass'n, Inc. v. N.M. PRC*, 787 F.3d 1068, 1071 (10th Cir. 2015). "The inquiry required under Rule 24(a)(2) is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate." *San Juan Cty. v. United States*, 503 F.3d 1163, 1206 (10th Cir. 2007). SUWA does not satisfy either the impairment requirement or the inadequate representation requirement.

**a.   SUWA's interests will not be impaired by this litigation.**

"A protectable interest is one that would be impeded by the disposition of the action." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1165 (10th Cir. 2017) ("*Zinke*") (internal citations omitted). In other words, "the question of impairment is not separate from the question of existence of an interest." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001) ("*UAC*"). A would-be intervenor cannot establish an interest in the litigation merely by offering additional, irrelevant evidence to support a challenged governmental action. *See Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88, 91 (10th Cir. 1993) (finding "the opportunity to offer extraneous evidence beyond the administrative record, and thus beyond the scope of the narrow issue before the district court, is not an interest protectable in [litigation involving a challenge to the legality of the EPA's

permitting veto]."). Instead, a would-be intervenor bears the "minimal" burden of showing that "impairment of its interest is possible if intervention is denied." *UAC*, 255 F.3d at 1253.

SUWA's asserted interests in support of intervention relate entirely to their advocacy for conservation on public lands in the western United States. *See* Memorandum in Support of Motion to Intervene, pp. 3-4, Dkt. 28. Additionally, the alleged "impairment" of those interests turns on the value SUWA assigns to the implementation of the Rule. *Id.* at pp. 4-6. Those implementation-level concerns are irrelevant and not at issue here. The Federal Defendants relied on a categorical exclusion when denying further NEPA review, arguing the Rule is administrative in nature and does not, in and of itself, cause any environmental effects. 89 Fed. Reg. 40308, at 40333 (invoking a categorial exclusion in 43 C.F.R §46.210(i) and claiming the rule "sets out a framework but is not self-executing in that it does not itself make substantive changes on the ground"). Plaintiff States are challenging that specific finding, arguing further NEPA review is required. SUWA is seeking to intervene in support of the Federal Defendants' position, suggesting that enjoining the Rule would have immediate effects on their environmental interests. *See* Memorandum in Support of Motion to Intervene, p. 6, Dkt. 28. This presents an internal inconsistency in SUWA's argument, as the supposed environmental effects identified by SUWA should be evaluated through the NEPA process. Indeed, SUWA's position underscores the need for the additional environmental review requested by Plaintiff States.

Regardless, however, a ruling in Plaintiff States' favor does not necessarily eliminate the "conservation tools" SUWA associates with the Rule. Plaintiff States seek to enjoin the Rule and require the BLM to fully consider its environmental effects. If the Rule only provides environmental benefits, as SUWA suggests, further NEPA review would not result in the substantive changes outlined in SUWA's briefing. More importantly, as discussed more fully

5

below, defending against Plaintiff States' position requires precisely the same argument – BLM's NEPA analysis was adequate, and no further review is necessary. This is an obligation, and argument, that belongs solely to the Federal Defendants and SUWA does not have an independent interest in the resolution of that procedural claim.

**b. The Federal Defendants adequately represent SUWA's interests.**

"Even if an applicant satisfies the other requirements of Rule 24(a)(2), it is not entitled to intervene if its interest is adequately represented by existing parties." *Kane County, Utah v. U.S.*, 597 F.3d 1129 (10th Cir. 2010). "The most common situation in which courts find representation adequate arises when the objective of the applicant for intervention is *identical* to that of one of the parties." *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir. 1986) (emphasis added). Even when the party is the government, a proposed intervenor is adequately represented when its interests "flow from [their] objective of preserving [the government's action]" and the government has the "identical litigation objective" of preserving that action. *Tri-State Generation*, 787 F.3d at 1072-74.

Courts adopt a "presumption that representation is adequate when the objective of the [proposed intervenor] is identical to that of [the United States]." *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1204 (10th Cir. 2007) (plurality opinion) (cleaned up). A proposed intervenor does "not overcome" that presumption even when its "ultimate motivation in th[e] suit may differ" and even when the United States must balance "additional interests stemming from its unique status as a lawyer for the entire federal government." *Id.* at 1204. "At bottom, the pertinent inquiry is not whether [the parties] are pursuing the same relief . . . but instead is whether they have identical interests in pursuing that relief." *Kane County, Utah v. United States*, 94 F.4th 1017, 1032 (10th Cir. 2024). Here, SUWA and the Federal Defendants have identical interests in

defending against Plaintiff States – preserving the Rule, as drafted, without engaging in NEPA analysis. The substantive information offered by SUWA is irrelevant to that determination.

Case law demonstrates how a proposed intervenor can overcome the presumption that the government will adequately represent its interests, none of which are present here: (1) showing that the government is bound by "conflicting statutory obligations," *San Juan Cty.*, 503 F.3d at 1207 (plurality op.); (2) providing record-based "reason to think that the [government] will not vigorously argue in favor of its statutory authority," such as the government's demonstrated "reluctance" to defend its own authority, *Tri-State Generation*, 787 F.3d at 1074; or (3) pointing to a change in administrations along with the government's on-the record equivocation about whether it would adequately represent the proposed intervenors' interests, *Kane Cty., Utah v. United States*, 928 F.3d 877, 895 (10th Cir. 2019); *UAC*, 255 F.3d at 1256. Those circumstances do not apply.

First, SUWA cites *UAC* and *Zinke* for authority to suggest that the United States has varied interests that are contrary to interests asserted by SUWA. However, those cases are distinguishable and do not support intervention in this instance. Contrary to both *UAC* and *Zinke*, Plaintiff States are seeking a binary, procedural determination – the BLM failed to conduct the necessary environmental review required by NEPA. *See generally*, Complaint, Dkt. 1. The *UAC* decision was based on a conflict in the Federal Government's representation of the public interest generally versus the interest of a particular member of the public. *UAC*, 255 F.3d at 1255-56. Here, the Federal Defendants are not defending the public's interest in the substance of the Rule – they are defending the adequacy of their NEPA determination, a procedural obligation belonging solely to the Federal Defendants. The conflict identified in *UAC* therefore does not exist here.

The *Zinke* case fares no better. *Zinke* dealt with potential changes to the BLM's Leasing Reform Policy under executive orders from a new presidential administration. *Zinke*, 877 F.3d at

1169. The existence of those executive orders raised the possibility of diverging interests between the Federal government and the general public. *Zinke*, 877 F.3d at 1169. There is no potential divergence of interest here because the Federal Defendants have already demonstrated their intent to advocate for the adequacy of their NEPA review. *See* Memorandum in Opposition to Motion for Preliminary Injunction, Dkt. 40. Moreover, even assuming a new administration came into power during the instant litigation, such a shift would require a change in NEPA policy and conflicting findings regarding the adequacy (or inadequacy) of the BLM's existing NEPA obligations. *Zinke* is therefore distinguishable.

SUWA attempts to muddy that argument, suggesting their interests are not aligned with the Federal Defendants because they are focused on the Western United States, "often find themselves at odds with the BLM" regarding conservation, and requested the inclusion of additional conservation measures in the Rule. *See* Memorandum in Support of Motion to Intervene, p. 6. Even if SUWA's suggestions were true, those are not the "interests" at stake in this litigation. Plaintiff States are asking for a full and fair evaluation of the environmental effects associated with the Rule. *See generally*, Complaint, Dkt. 1. Modifying the substance of the Rule is simply not at issue at this phase of the litigation and the Federal Defendants have already demonstrated their intent to argue that the Rule did not require further NEPA analysis. *See* Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, Dkt. 40. Although muddied by its assertions of speculative interests, SUWA is seeking the same relief – uphold BLM's findings with respect to NEPA. The Federal Defendants have proven themselves capable of fully litigating that issue and adequately representing SUWA's interest in that regard.

Finally, the Federal Defendants' position regarding the adequacy of BLM's NEPA analysis is not subject to change during litigation, as SUWA suggests. The BLM based its NEPA analysis

on a finding that the Rule is administrative in nature and will not have any effect on the BLM's management until implementation. 89 Fed. Reg. 40308, at 40333. As discussed above, changing position would therefore require both a change in policy as it relates to NEPA review and conflicting findings regarding the adequacy (or inadequacy in this case) of BLM's NEPA obligations. Stated differently, following SUWA's argument to its logical conclusion would require the BLM to reverse position in this matter and outright concede that it failed to conduct proper NEPA analysis – a position that would be impossible to justify even in the event of a new administration *and* a new policy regarding NEPA review.

Further, the case law cited by SUWA in support of its argument for "shifting positions" is easily distinguished. First, the *UAC* Plaintiffs filed suit to invalidate a presidential proclamation to establish a national monument, which is entirely distinct from a procedural NEPA challenge. *UAC,* 255 F.3d at 1248. The designation and/or invalidation of monuments has significant potential for change across administrations. Indeed, such designations have routinely been altered by incoming administrations, with significant effect on management. *See generally* National Monuments and the Antiquities Act, CONGRESSIONAL RESEARCH SERVICE (Updated May 10, 2024), available at https://sgp.fas.org/crs/misc/R41330.pdf (discussing the history and controversy associated with monument designations). It is therefore plausible, if not expected, that a designation could be affected by a new presidential administration. Here, changing positions would require an outright reversal of the BLM's NEPA claims, an improbable, if not impossible position to justify. Moreover, the Federal Defendants are required to consider, and balance, multiple public interests in the designation of national monuments – whereas they are not required to consider the same interests in a purely procedural NEPA review.

The *Kleissler* case cited in *UAC* is similarly distinguishable. *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998). Plaintiffs in *Kleissler* were seeking an outright ban on logging allowed in the National Forest until further NEPA was conducted. *Id.* at 967. Several entities moved to intervene based on their continued interest in receiving funds from the challenged logging operations. *Id.* at 968. The Third Circuit found those interests were sufficient to support intervention because Plaintiffs' requested relief would have an immediate economic effect on the intervenors. *Id.* at 972. Here, Plaintiff States are seeking further procedural review of the Rule to ensure their environmental interests are fully considered – they are not seeking to ban or prevent SUWA from conducting conservation work, particularly as that work existed before the Rule. Stated differently, whereas the *Kleissler* plaintiffs were seeking intervention in a case where their financial interests were directly affected by a ban on logging, SUWA is seeking intervention in a case where its supposed interests will not be affected unless and until there is a substantive change to the Rule. Again, this is a procedural challenge, and the Federal Defendants will adequately represent any interest asserted by SUWA.

## B.  SUWA is not entitled to permissive intervention.

Courts have discretion to allow intervention if the prospective intervenor "has a claim or defense that shares with the main action a common question of law or fact" and the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). However, courts may also deny intervention when "the intervenors' interests are adequately represented by other parties." *Tri-State Generation*, 787 F.3d at 1076.

SUWA has not requested permissive intervention, limiting its argument to intervention as of right. However, as discussed above, SUWA and the Federal Defendants have identical interests – both seek to affirm the adequacy of the Federal Defendants' NEPA review. The substantive

concerns articulated by SUWA, while *potentially* different from those of the Federal Defendants, are simply not part of this action. Denial of permissive intervention is appropriate. Moreover, adding SUWA will unnecessarily complicate a straightforward legal argument – did the Federal Defendants conduct an adequate NEPA analysis? This is an obligation that belongs to the Federal Defendants, and they are perfectly capable of arguing this matter to the Court. There is simply no need to complicate the argument with the irrelevant substantive concerns articulated by SUWA.

## CONCLUSION

Considering the above, Plaintiff States respectfully request the Court deny SUWA's Motion to Intervene.

Dated: August 8, 2024

Respectfully submitted,

/s/ Jason DeForest

TYLER R. GREEN (USB #10660)
CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com
*Attorney for Plaintiff State of Utah*

DANIEL SHAPIRO*
KATHLEEN S. LANE*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
daniel@consovoymccarthy.com
katie@consovoymccarthy.com
*Attorneys for Plaintiff State of Utah*

*Application for admission pro hac vice forthcoming*

SEAN D. REYES (USB #7969)
Utah Attorney General
STANFORD E. PURSER (USB #13440)
Utah Solicitor General
KATHY A.F. DAVIS (USB #4022)
JASON DEFOREST (USB #14628)
K. TESS DAVIS (USB #15831)
Assistant Attorneys General
1594 West North Temple
Suite 300, Salt Lake City, UT 84114
(801) 538-9600
spurser@agutah.gov
kathydavis@agutah.gov
jdeforest@agutah.gov
kaitlindavis@agutah.gov
*Attorneys for Plaintiff State of Utah*

D. DAVID DEWALD
Deputy Attorney General
Office of the Attorney General of Wyoming
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895
david.dewald@wyo.gov
*Attorney for Plaintiff State of Wyoming*