**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

|  |  |
|---|---|
| STATE OF UTAH, and STATE OF WYOMING, <br><br>*Plaintiffs*, <br><br>v. <br><br>DEB HAALAND, in her official capacity as the Secretary of the U.S. Department of the Interior; U.S. DEPARTMENT OF THE INTERIOR; TRACY STONE-MANNING, in her official capacity as the Director of the Bureau of Land Management; and U.S. BUREAU OF LAND MANAGEMENT, <br><br>*Defendants*. | Case No. 2:24-cv-00438 <br><br>Judge David A. Barlow <br><br>Magistrate Judge Daphne A. Oberg |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR
A STAY UNDER 5 U.S.C. §705 OR FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

Table of Contents............................................................................................................i

Table of Authorities.......................................................................................................ii

Introduction ...................................................................................................................1

Argument........................................................................................................................1

I. Plaintiffs have demonstrated irreparable harm.....................................................1

 A. Plaintiffs are irreparably harmed by Defendants' NEPA violation...............1

 B. Plaintiffs are irreparably harmed by costs incurred because of the Rule.......3

 C. Plaintiffs suffer irreparable environmental harms. ...........................................4

II. Plaintiffs States are likely to succeed on the merits. ...............................................5

 A. Plaintiffs have standing..........................................................................................5

 B. BLM's reliance on the §46.201(i) CX is arbitrary and capricious. .................6

 C. BLM's failure to analyze extraordinary circumstances is arbitrary and capricious........7

 D. The scope of Plaintiffs' requested relief is appropriate.....................................9

III. The other factors weigh in favor of relief. .............................................................9

Conclusion....................................................................................................................10

Certificate of Compliance ............................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*California ex rel. Lockyer v. Dep't of Agriculture*,
    575 F.3d 999 (9th Cir. 2009)........................................................................................6

*Citizens' Comm. to Save Our Canyons v. U.S. Forest Serv.*,
    297 F.3d 1012 (10th Cir. 2002) ..................................................................................6

*Colorado v. EPA*,
    989 F.3d 874 (10th Cir. 2021)....................................................................................4

*Davis v. Mineta*,
    302 F.3d 1104 (10th Cir. 2002)............................................................................. 1, 2

*Dine Citizens Against Ruining Our Environment v. Jewell*,
    839 F.3d 1276 (10th Cir. 2016) ..................................................................................2

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021).....................................................................................................6

*Gerber v. Norton*,
    294 F.3d 173 (D.C. Cir. 2002) ...................................................................................6

*High Sierra Hikers Ass'n v. Blackwell*,
    390 F.3d 630 (9th Cir. 2004).......................................................................................2

*New Jersey v. EPA*,
    989 F.3d 1038 (D.C. Cir. 2021) .................................................................................3

*Sierra Club v. Bosworth*,
    510 F.3d 1016 (9th Cir. 2007).....................................................................................8

*Sierra Club v. Marsh*,
    872 F.2d 497 (1st Cir. 1989) .......................................................................................2

*Sierra Club v. U.S. Army Corps of Engineers*,
    645 F.3d 978 (8th Cir. 2011).......................................................................................2

*Texas v. Biden*,
    646 F. Supp. 3d 753 (N.D. Tex. 2022).......................................................................9

*Uranium Watch v. U.S. Forest Serv.*,
    2010 WL 3703807 (D. Utah Sept. 14, 2010) .............................................................2

*Vill. of Logan v. U.S. Dep't of Interior*,
    577 F. App'x 760 (10th Cir. 2014) .............................................................................2

*W. Watersheds Project v. Zinke,*
  336 F. Supp. 3d 1204 (D. Idaho 2018) ........................................................................................2

*Winter v. Natural Resources Defense Council,*
  555 U.S. 7 (2008) ........................................................................................................................1

**Statutes**

5 U.S.C. §705 ................................................................................................................... 9, 10

**Rules**

43 C.F.R. §46.215 ........................................................................................................................8

43 C.F.R. §1610.7-2(d) ...............................................................................................................6

43 C.F.R. §6102.4 ........................................................................................................................6

85 Fed. Reg. 75,874 .....................................................................................................................7

87 Fed. Reg. 47,296 .....................................................................................................................7

89 Fed. Reg. 40,308 .....................................................................................................................6

**INTRODUCTION**

Plaintiffs have carefully demonstrated how the Public Lands Rule is already causing and will continue to cause irreparable environmental harm. And it is that environmental harm that required analysis under NEPA *before* the Rule was promulgated—not at some unspecified future point. The already-occurring environmental harms warrant a court order preserving the status quo while BLM conducts the environmental review that the law requires.

**ARGUMENT**

**I.  Plaintiffs have demonstrated irreparable harm.**

**A.  Plaintiffs are irreparably harmed by Defendants' NEPA violation.**

Contrary to the Government's argument (at 7-8), the presumption that irreparable harm flows from a NEPA violation is not made up by courts and was not abrogated by *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008). This presumption flows not from judge-made law, but from statutory text: "In mandating compliance with NEPA's procedural requirements as a means of safeguarding against environmental harms, *Congress* has presumptively determined that the failure to comply with NEPA has detrimental consequences for the environment." *Davis v. Mineta*, 302 F.3d 1104, 1114 (10th Cir. 2002), *abrogated on other grounds*, 839 F.3d 1276, 1281-82 (10th Cir. 2016) (emphasis added). Based on this congressional determination, "harm to the environment may be presumed when an agency fails to comply with the required NEPA procedure." *Id.* at 1115.

This presumption does not conflict with the Supreme Court's later holding in *Winter*. There, the Court rejected the Ninth Circuit's holding that NEPA excused a party from establishing a portion of the traditional four-factor preliminary-injunction test altogether, and instead held that the ordinary preliminary-injunction standards apply. 555 U.S. at 22-23. *Davis* accords with this holding by expressly requiring movants to make the traditional irreparable harm showing: "Plaintiffs must still make a

1

specific showing that the environmental harm results in irreparable injury to their specific environmental interests." 302 F.3d at 1115.[1]

Under any standard, Plaintiffs have established irreparable harm. As Plaintiffs explain at length below, Defendants flagrantly violated NEPA by publishing the Rule without the required environmental analysis. Defendants assert (at 8-9) that this alone is insufficient to establish irreparable harm and that the States cannot rely "solely on the presumption of harm." But far from relying solely on a presumption, the States' "irreparable injury flows from [BLM's] failure to evaluate the environmental impact" of the Rule. *Uranium Watch v. U.S. Forest Serv.*, 2010 WL 3703807, at *8 (D. Utah Sept. 14, 2010) (quoting *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 642 (9th Cir. 2004)). And it is indisputable that the Rule creates an entire apparatus and new type of lease that will create immense bureaucratic inertia. Indeed, as the States discuss below, they have already had to take extensive actions to prepare for this new regime. NEPA ensures that agencies do not create such a "bureaucratic steam roller" before taking a careful look at environmental consequences. *Davis*, 302 F.3d at 1115; *see also Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 986-87 (8th Cir. 2011). ("[W]hen a decision to which NEPA obligations attach is made without the informed environmental consideration that NEPA requires, the harm that NEPA intends to prevent has been suffered." (quoting *Sierra Club v. Marsh*, 872 F.2d 497, 500 (1st Cir. 1989) (Breyer, J.))); *W. Watersheds Project v. Zinke*, 336 F. Supp. 3d 1204, 1241 (D. Idaho 2018) ("The Court sees good reason to follow the lead of these other courts and concludes that an incomplete observance of environmental laws and procedure (through abbreviated NEPA reviews and less complete public comments or none at all),

---

[1] Contrary to the Government's assertion (at 8), *Dine Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281-82 (10th Cir. 2016), did not abrogate the presumption of harm. That case says nothing about whether a presumption of irreparable harm applies based on the text of NEPA, especially given that *Davis* requires a specific showing of irreparable environmental harm. *See Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766-67 (10th Cir. 2014) (recognizing *Davis* presumption).

aided by agency inertia, combine to create irreparable harm."). Once Defendants start this leasing process—without subjecting it to the appropriate level of environmental analysis—and it gathers momentum, it will be incredibly difficult for a court to stop it. This alone constitutes irreparable injury.

### B. Plaintiffs are irreparably harmed by costs incurred because of the Rule.

Separately, Plaintiffs have amply demonstrated an independent source of irreparable harm: the costs of complying with the Rule. Defendants simply have no response to Plaintiffs' specific evidence of irreparable harm to the State's fiscal interests. Instead, they assert (at 12) that Plaintiffs' demonstrated costs are self-imposed because the Rule "does not require the states to commit *any* funding toward securing restoration or mitigation leases." But this ignores that the States already are committing resources to applying for such leases because failing to obtain them will create significant harm to State lands and the environment. *See infra.* Utah's rational decision that it must apply for each lease or face enormous environmental harm is not a self-inflicted injury. *See, e.g., New Jersey v. EPA,* 989 F.3d 1038, 1046-47 (D.C. Cir. 2021) (party's rational response to coercive regulation is not a self-inflicted injury).

The Government (at 12) ignores extensive record evidence in asserting that Utah's costs of compliance are "routine and not imminent." Absent this Rule, Utah would not have to undertake a massive effort to "collaborate with its conservation districts and the Division of Wildlife Resources ('DWR') to apply for every restoration and mitigation lease that becomes available under the Public Lands Rule." Ex. 1 ¶17. These harms are not speculative but definite—this effort is already underway and costing considerable resources. *Id.* (detailing increased staff workload and resource usage currently occurring); *see also* Ex. 2 ¶¶11-25 (providing detailed cost estimates down to the level of job descriptions and salary hours needed). These are costs that the Rule itself is currently causing—regardless of how Defendants implement it in the future. The Rule also prevents Wyoming from

3

managing its sage grouse populations and prevents its agency charged with doing so—SGIT—from even applying for a lease: a harm caused by the Rule itself, not future implementation. Ex. 3 ¶¶22-23.

Defendants' reliance (at 12-13) on *Colorado v. EPA* proves Plaintiffs' point. There, the court faulted the State for relying solely on a "conclusory statement" that the challenged rule would "create an immediate compliance and enforcement burden," but failed to specify when the State "would need to take enforcement action in place of the federal government." 989 F.3d 874, 886 (10th Cir. 2021). Here, by contrast, Plaintiffs have demonstrated that they are *already* incurring costs because of the Rule and have provided detailed cost estimates of resources they will be expending in response to the Rule. And they have identified specific actions they will need to take beyond these costs, such as applying for each restoration and mitigation lease offered by BLM. This is a far cry from showing a "mere possibility of the potential for a small increase." *Id.* at 887.

### C. Plaintiffs suffer irreparable environmental harms.

Defendants attempt to minimize Plaintiffs' environmental harms by asserting that they are contingent on the Rule's future implementation. But Plaintiffs' evidence demonstrates that the Rule itself causes irreparable harm, regardless of how it is implemented. The harm stems not from future restoration and mitigation leases, but from the concept of restoration and mitigation leases itself, which the Rule directly creates. Plaintiffs' argument is that *no* restoration and mitigation lease can ever be issued without BLM conducting NEPA analysis of the new class of leases. BLM's failure to do so irreparably harms Plaintiffs' lands and environment.

Defendants take issue with Plaintiffs' extensive showing of environmental harm by asserting (at 10) that Utah "fails to explain how the restoration of adjacent federal land would in any way affect rangeland improvement projects on state land." But Utah explained that the passive management authorized by the Rule "can lead to degraded landscapes, proliferation of noxious weeds, and a heightened risk of catastrophic wildfires." Ex. 1 ¶18. Contrary to Defendants' suggestion (at 10-11)

4

that Plaintiffs' harms are best addressed in future lease approvals, the harm is from the Rule's authorization of passive management itself, not the facts of any specific lease. By failing to analyze the environmental effects of the Rule's authorization of passive management, the Rule directly harms Utah's environment. *Id.* ¶19. And Plaintiffs detailed how the Rule is already harming the environment by endangering Utah's rangeland improvement projects through the uncertainty that the Rule itself is creating—harm arising irrespective of actions taken to implement it. *Id.*

Defendants argue (at 11) that Wyoming's concerns are merely speculative and can be raised in a proposed lease proceeding. But Wyoming extensively documented how the Rule itself—not some later lease proceeding—directly causes harm to its sage grouse management. For one, the Rule grants BLM novel authority to confer control upon non-governmental entities to implement restoration and mitigation leases, despite not analyzing the effect of doing so on Wyoming's sage grouse management efforts. Ex. 3 ¶18. The Rule also does not carve out a role for Wyoming's SGIT in the issuance of restoration and mitigation leases. *Id.* ¶¶19-20. Additionally, the Rule grants the right to meaningful consultation to tribes, but denies such a right to SGIT, harming Wyoming's ability to ensure its environmental harms are considered. *Id.* ¶22. Finally, the Rule deprives SGIT of the right to hold a restoration or mitigation lease, which seriously endangers SGIT's ability to manage the sage grouse population. *Id.* ¶23. These harms cannot be addressed in a later lease-issuance proceeding.

## II.  Plaintiffs States are likely to succeed on the merits.

### A.  Plaintiffs have standing.

Defendants do not seriously contest Plaintiffs' standing, beyond briefly noting (at 14) that Plaintiffs' injuries are speculative for the same reasons they outline in their discussion of irreparable harm. For the reasons discussed above and at length in Plaintiffs' opening brief, Plaintiffs' injury is non-speculative, imminent, causes harm, and is redressable. *See supra* section I; PI Mem.7-12.

**B.  BLM's reliance on the §46.201(i) CX is arbitrary and capricious.**

Defendants assert that BLM's conclusory "explanation" for invoking the CX is sufficient. But an agency's decision to invoke a CX is reviewed under the arbitrary and capricious standard of review. *Citizens' Comm. to Save Our Canyons v. U.S. Forest Serv.*, 297 F.3d 1012, 1023 (10th Cir. 2002). This standard requires that an agency action be both "reasonable *and reasonably explained*." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (emphasis added). Conclusory agency statements that it considered an important aspect of the problem are insufficient under this standard. *See, e.g.*, *Gerber v. Norton*, 294 F.3d 173, 185 (D.C. Cir. 2002). BLM's reasoning for invoking the procedural part of the CX consisted of one sentence that merely asserts that the Rule is not "substantive." 89 Fed. Reg. 40,308, 40,333 (May 9, 2024). And its reasoning for invoking the speculative or conjectural part of the CX consists of two sentences that again merely state without explanation that the agency finds future effects of the Rule to be "speculative or conjectural." *Id.*

***Administrative or procedural.*** In their ex-post attempt to construct the missing explanation, Defendants assert (at 15-16) that the Rule is procedural in nature because it merely "establishes a framework." But the Rule does far more. It creates an entirely new type of lease that was not previously available—one that "allows BLM to lease land for the purpose of conservation, and specifically for either restoration or mitigation." Defs. Br. 4 (citing 43 C.F.R. §6102.4). The Rule also "establishes [new] standards for who may hold leases" and imposes requirements upon prospective lessees. *Id.* (citing 43 C.F.R. §6102.4(a)-(i)). And as explained, the Rule picks and chooses between entities that can apply for such leases and confers special rights upon some, but not all, governmental entities. The Rule also amends existing regulations governing the designation of areas of critical environmental concern to add new substantive criteria. *Id.* (citing 43 C.F.R. §1610.7-2(d)). The creation of an entirely new class of lease, conferral of rights on certain parties, and establishment of criteria and standards are not merely procedural actions. Thus, the Rule both supplants a prior substantive rule, as in

6

*California ex rel. Lockyer v. Dep't of Agriculture*, 575 F.3d 999, 1019 (9th Cir. 2009) (replacement of "substantive" provisions of rule triggers NEPA requirements), and goes further by creating an entirely new interest that did not previously exist.[2]

Defendants close by asserting (at 17-18) that the application of the CX "is consistent with and further supported by Interior's historical use of the CX." But, again, this assumes that the Rule merely creates a "procedural framework." As explained above, that is incorrect. The examples Defendants provide prove the point. The *Alaska Native Vietnam-Era Veterans Allotments Rule* merely implemented a *statutory command* that a certain class of veterans are eligible to apply for land allotments. 85 Fed. Reg. 75,874, 75,875. A more proper analogy for the Rule at issue here is if the Alaska rule had created an entirely new class of land allotment. Similarly, the *Paleontological Resources Preservation Rule* implemented a new permitting regime *set out in statute*. 87 Fed. Reg. 47,296, 47,297. By contrast, here the Rule itself creates the new publicly available lease. The same holds true for the other rules Defendants cite, which merely tinkered with existing frameworks rather than created a new substantive offering from the government.

**Speculative or conjectural.** Defendants' discussion (at 18-19) of the "speculative or conjectural" prong of the CX merely parrots their argument that the Rule will not cause imminent environmental harm. But Plaintiffs thoroughly explained that "even if BLM *never issues* a single lease in Utah, the State will nonetheless have suffered" environmental harms, which "arise from the Final Rule itself and the creation of the leasing tool—not the ultimate approval of leases." PI Mem.11.

**C. BLM's failure to analyze extraordinary circumstances is arbitrary and capricious.**

Defendants' ex-post attempt to establish that BLM analyzed extraordinary circumstances fails.

---

[2] Plaintiffs' citation of other agency CXs demonstrates that the Government understands the terms "administrative" and "procedural" to refer to internal agency organization and management, and in contradistinction to substantive rules. *See* PI Mem.14-15. And the fact that Interior has issued CXs that cover discrete procedural matters does not undermine the procedural nature of the general CX here.

*First*, Defendants assert (at 19-20) that the Rule does not "establish a precedent for future action or represent a decision in principle about future actions with potentially significant environmental effects," 43 C.F.R. §46.215(e), because it "does not require BLM to make any particular substantive decision or take any particular action." But this is premised on the same mistaken notion that informs all of Defendants' arguments. The issue is not with future lease issuance, but with the creation of an entirely new kind of lease. And in focusing solely on the term "precedent," Defendants fail to respond to Plaintiffs' argument (PI Mem.17) that the Rule is a "decision in principle about future actions with potentially significant environmental effects." The Rule decides that a new class of lease should be made available that did not previously exist. Not only is this an environmentally significant "decision in principle," it also sets a precedent for the agency to issue leases based on the new criteria set out in the Rule.

*Second*, Defendants assert (at 20-22) that the Rule does not have "highly controversial environmental effects," 43 C.F.R. §46.215(c), because public controversy "is not tantamount to controversial environmental effect." But Plaintiffs identified more than a mere public controversy— they have extensively documented why the Rule will have detrimental environmental effects, a proposition that BLM rejected without analysis. This is nothing like the cases Defendants cite (at 21) in which comments did not seriously challenge environmental deficiencies in the agency's analysis. Rather, just as in *Sierra Club v. Bosworth*, numerous private and governmental entities "raised substantial questions as to whether the project would cause significant environmental harm and expressed serious concerns about the uncertain risk, size, nature, and effects of actions under" the Rule. 510 F.3d 1016, 1031 (9th Cir. 2007).

*Third*, Defendants assert (at 22-23) that the Rule does not have "a direct relationship to other actions with individually insignificant but cumulatively significant environmental effects," 43 C.F.R. §46.215(f), because Plaintiffs fail to "name a single other related action" beyond "land use planning

and project-level actions." But Plaintiffs do just that, noting that the Rule "creates the new restoration and mitigation leasing tool, adjusts the type of information it requires BLM to use in its decisionmaking, changes the process for designating ACECs …, and defines more than two dozen terms." PI Mem.19 (citations omitted). Defendants have no answer to Plaintiffs' argument that the "cumulative effects of these numerous changes will surely be significant." *Id.*

### D. The scope of Plaintiffs' requested relief is appropriate.

Defendants ignore the relief Plaintiffs actually request. Plaintiffs have requested a preliminary injunction *or* a stay under 5 U.S.C. §705. Congress expressly provided for a stay of a rule's effective date. *See* §705 ("On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court … may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceeding."). Like APA vacatur, a §705 stay operates on the rule directly; it does not enjoin any officer. *See Texas v. Biden*, 646 F. Supp. 3d 753, 769 (N.D. Tex. 2022). A §705 stay does not implicate the concerns some have raised against nationwide injunctions—allegedly unauthorized judicial overreach—any more than the APA's standard vacatur remedy because Congress has expressly provided for these remedies. *Id.*[3]

### III. The other factors weigh in favor of relief.

Defendants cannot articulate one reason why the public interest would be harmed by maintaining the status quo. By contrast, Plaintiffs recite numerous environmental harms they are facing and imminently will face as a result of the Rule. *See supra* Sec. I; *see also* PI Mem.7-12.

---

[3] Defendants' request (at 25) to limit the injunction's scope to only Utah and Wyoming is misplaced because the environmental harms at issue arise not only from the Rule's effect on those two States but also from its impact on surrounding States. Wildfires do not respect state lines.

## CONCLUSION

This Court should grant Plaintiffs' motion and enter a preliminary injunction or a stay under 5 U.S.C. §705.

Dated: August 15, 2024

Respectfully submitted,

/s/ Jason DeForest

TYLER R. GREEN (USB #10660)
CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com
*Attorney for Plaintiff State of Utah*

SEAN D. REYES (USB #7969)
Utah Attorney General
STANFORD E. PURSER (USB #13440)
Utah Solicitor General
KATHY A.F. DAVIS (USB #4022)
JASON DEFOREST (USB #14628)
K. TESS DAVIS (USB #15831)
Assistant Attorneys General
1594 West North Temple
Suite 300, Salt Lake City, UT 84114
(801) 537-9801
spurser@agutah.gov
kathydavis@agutah.gov
jdeforest@agutah.gov
kaitlindavis@agutah.gov
*Attorneys for Plaintiff State of Utah*

DANIEL SHAPIRO*
KATHLEEN S. LANE*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
daniel@consovoymccarthy.com
katie@consovoymccarthy.com
*Attorneys for Plaintiff State of Utah*

D. DAVID DEWALD
Deputy Attorney General
Office of the Attorney General of Wyoming
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895
david.dewald@wyo.gov
*Attorney for Plaintiff State of Wyoming*

*\*Application for admission pro hac vice forthcoming*

10

## CERTIFICATE OF COMPLIANCE

I, Jason DeForest, certify that this motion contains 3069 words and complies with DUCivR 7-1(a)(4).

_/s/_ Jason DeForest_____
Jason DeForest

11